IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JINAN CHEHADE,<br><br>        Plaintiff,<br><br>    v.<br><br>FOLEY & LARDNER, LLP,<br><br>        Defendant. | Case No: 1:24-cv-04414<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Keri Holleb Hotaling |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Foley & Lardner LLP ("Foley" or the "Firm") respectfully submits the following reply memorandum of law in support of its motion for summary judgment.

**INTRODUCTION**

Summary judgment is the time for <u>evidence</u>—not inflammatory rhetoric or unsupported, conclusory allegations. The <u>evidence</u> in this case clearly demonstrates Foley is entitled to summary judgment on Plaintiff Jinan Chehade's ("Plaintiff") single count of discrimination. When Foley hired Plaintiff as a Summer Associate in 2022 and extended her an offer to join the Firm as a full-time Associate in October 2023, it was well aware of Plaintiff's religious and ethnic backgrounds. Neither were, or ever have been, an issue. It was not until Plaintiff made multiple troubling, *public* statements about the October 7, 2023 Hamas attacks (to which she has admitted) and then "doubled down" on those statements when confronted about them, that Foley's CEO and Chairman, Daljit Doogal, decided to rescind Plaintiff's offer. And the reason for that decision has always been the same—that is, because the statements not only violated the Firm's core values, but also constituted a display of incredibly poor judgment.

1

Summary judgment should be granted because these core facts remain undisputed, and because they demonstrate that Plaintiff's offer was rescinded not because of her religion or ethnicity, but because of her public statements about the October 7 attacks, her obstinance when asked about them, and her overall lack of judgment in making the statements in the first instance and in her handling of the entire situation.

Recognizing this dilemma, Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition" or "Opp.") resorts to baseless accusations against the Firm's former Managing Partner, Stanley Jaspan, who is deceased (and thus was not deposed or otherwise given an opportunity to respond to Plaintiff's unfounded allegations). Jaspan, in reality, opined that "*[a] pro-Palestinian stance itself is not a problem in my mind (at least as to [Plaintiff's] employment by the firm)*." The Opposition ignores this fact—and the overwhelming testimony of multiple witnesses (including Doogal)—and instead proclaims that Plaintiff's offer was rescinded because of "behind-the-scenes lobbying" by Jaspan and his alleged discriminatory animus towards her, going so far as to accuse him of "oppos[ing] calls for Palestinian rights" because he owned property in Isreal and is buried there.

Yet, as Plaintiff knows, there is no <u>evidence</u> that Jaspan was the decisionmaker here, and no evidence that he held any discriminatory bias towards Plaintiff or individuals of her religious or ethnic backgrounds. A close review of the record in this case will expose that Plaintiff's "behind-the-scenes lobbying" theory has no basis in fact, and is borne of unsupported allegations and gross mischaracterizations of the record.

Plaintiff's "disparate treatment" argument fares no better. Her reliance on *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) is misplaced. In *Coleman*, the plaintiff's alleged comparators "were disciplined by the same decisionmaker, subject to the same code of conduct

2

and disciplined more leniently for violating the same rule as she." *Id.* Here, however, the evidence is to the contrary. The two partners she identifies as "comparators" are not at-will employees like her, but owners of the Firm. Additionally, in contrast to Plaintiff, when confronted about their social media activity, these partners removed their posts and acknowledged how their conduct might implicate the Firm in an adverse way. And each of Plaintiff's purported comparators' social media activity was different in tenor and timing from hers, and involved very different circumstances. As a matter of law, these individuals are not similarly situated to Plaintiff and thus cannot be considered "comparators."

Finally, there is no evidence from which a reasonable juror could conclude Plaintiff's termination was pretextual. Undisputed record evidence shows Foley's reasons for rescinding Plaintiff's offer have never changed. Plaintiff made public statements regarding the October 7 Hamas attacks, and when questioned about her statements, she equivocated and doubled down on those statements, leaving Foley's management with the impression she condoned the attacks. And importantly, Plaintiff showed no regard or appreciation for the impact of her statements and actions, causing management to "question her judgment"—"a key component of [the] job."

For these reasons outlined in detail below, the Court should grant summary judgment.

**I.    FOLEY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS**

    **A.    The Evidence Shows Foley Did Not Discriminate Against Plaintiff Because Of Her Religion Or Ethnicity.**

There is no evidence from which a reasonable jury could conclude Plaintiff's ethnicity or religion caused Foley to rescind her offer. First, Plaintiff cannot dispute her public statements from October 7 to October 11, 2023, or the impressions her statements left on Chicago Office Managing Partner Frank Pasquesi and Firm Litigation Chair Lisa Noller after they met with

3

Plaintiff on October 22, 2023. PRSOF[1] ¶¶ 36-41; Noller Dep. 34:16-35:12; 78:17-22; Pasquesi Dep. 39:2-6; Doogal Dep. 14:10-15:20; 114:23-116:23. Second, the evidence establishes that Firm CEO and Chairman, Daljit Doogal, made the ultimate decision to rescind Plaintiff's offer, *see, e.g.*, Doogal Dep. 11:8-10, based on Pasquesi and Noller reporting that, during the October 22 meeting, Plaintiff had "double[d] down on the fact that she believed it was appropriate to condone the actions of Hamas on October 7th as a means to an end . . . [b]y any means necessary." *Id.* 115:14-116:3. This "made [Doogal] . . . question[] [Plaintiff's] judgment . . . a key component of [the] job[]." *Id.* 119:21-120:2.

Further and notably, Plaintiff cannot dispute Foley extended her <u>two</u> employment offers having been fully aware of her religious and ethnic backgrounds. PRSOF ¶¶ 1-7; 18. She testified that no one mistreated her for any reason while she worked at Foley, including Pasquesi and Noller, whose impressions of her public activity were, as she concedes, "important to her fate." *See* Opp. at 2; PRSOF ¶ 19. The only thing that changed between Foley's second offer to Plaintiff and its decision to rescind that offer was Plaintiff's public activity regarding the October 7 attacks, her "doubling down" on these public statements when asked about them, and the lack of judgment displayed by her statements and actions.

### 1. No Evidence Supports Plaintiff's "Behind-The-Scenes Lobbying" Theory.

Because she has no actual evidence to support her discrimination claims, Plaintiff has conjured up a theory grounded in unsupported allegations and mischaracterizations of the record that Jaspan, not Doogal, made the decision to rescind her offer "because of his intense aversion to Plaintiff, an Arab Muslim." *See* Opp. at 10. No admissible evidence supports these assertions, and so Plaintiff's "behind-the-scenes lobbying" theory should be rejected.

---

[1] Foley's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Dkt. 66) is referred to herein as Foley's "Rule 56.1 Statement" or "SOF," and Plaintiff's response thereto (Dkt. 75) is referred to as "PRSOF."

*First*, the evidence shows Doogal made the decision to rescind Plaintiff's offer. Noller Dep. 11:24-12:2; Patton Dep. 65:9-13; Doogal Dep. 11:8-10. It likewise shows Jaspan remained neutral in the decision-making process. Noller Dep. 12:3-19. Plaintiff wants to hang her hat on testimony from Firm DEI Director Alexis Robertson regarding a Teams call with Jaspan during which he allegedly said "he wanted me to understand why he made the decision about rescinding the offer." But Robertson's testimony establishes that she was not involved in the decision to rescind Plaintiff's offer and has no actual knowledge of who participated into the decision or what led to the decision. *See* Robertson Dep. 8:7-11 ("I'm not certain of everybody involved in the decision-making . . . ."); *id.* 31:24-32:1 ("I wasn't involved in the decision for her – her offer to be revoked"); *id.* 49:16-19 ("I hadn't been aware of what was happening, when or what, or what specifically happened that led to the firm making the decision it made."). Given the evidence—specifically, Robertson's lack of knowledge regarding the decision and Doogal's (and others') definitive testimony that the decision was Doogal's—Robertson's testimony is insufficient to raise a genuine issue of material fact. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (in determining whether a genuine issue of material fact exists, the court "draw[s] only reasonable inferences, not every conceivable inference"); *Fields v. United Transp. Union*, No. 04 C 6373, 2006 WL 218170, at *3 (N.D. Ill. Jan. 26, 2006) (testimony from plaintiff's three witnesses could not create a genuine issue of material fact where those witnesses had no personal knowledge concerning the defendant's employment policy at issue, and where defendant presented contrary testimony from several members of its management team who had personal knowledge of the policy).

*Second*, and moreover, there is no support in the record for Plaintiff's unfounded accusation that Jaspan discriminated against her (or anyone). Setting aside that he passed away in July 2024 and thus was never deposed, the most Plaintiff has offered as to Jaspan's purported

5

discriminatory bias are blatant mischaracterizations of the record and that Jaspan purportedly owned property in Israel and was buried there. This is plainly irrelevant and insufficient to prove discriminatory intent. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (inferences supported by speculation or conjecture cannot defeat a summary judgment); *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014); *Rand v. C.F. Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) (inferences and opinions "grounded on . . . flights of fancy, speculations, hunches [and] intuitions" are insufficient to preclude summary judgment).

Indeed, Plaintiff's "behind-the-scenes" lobbying theory is undermined by the correspondence she relies on to support it. *See* Opp. at 5. Regarding the October 16 correspondence between Firm recruitment and Firm management, it shows Jaspan was the first to opine that "[a] pro-Palestinian stance itself is not a problem in my mind (at least as to her employment by the firm)," and that more information was needed to assess the nature of Plaintiff's statements. Opp. at Ex. 17. After Firm Director of Legal Recruiting, Amy Moynihan, responded with additional information regarding Plaintiff's statements, including *inter alia* that October 7 was "a natural response of 75 years of occupation" and "[i]f you support Palestine understand that necessitates supporting our right to defend ourselves and liberate our homeland by any means necessary," Jaspan explained how those statements could be construed. *See id.* Notably, in doing so, Jaspan said nothing about Plaintiff's hijab, religion, or ethnicity in that email; rather, he only commented on the content and possible interpretations of her public statements. *See id.* And as for the October 21 emails Jaspan sent Noller the day before Noller's October 22 meeting with Plaintiff, they were sent to Noller for the sole purpose of providing "edification and context." Noller Dep. 90:14-17. Significantly, Jaspan encouraged Noller to "go into the discussion with an open mind," and told her "he did not think he should be a part of any interview with [Chehade]" because the situation was "personal to him." *Id.* 92:8-18. At bottom,

Jaspan's statements and actions are not the behaviors of a person harboring anti-Palestinian or Muslim animus.

Stripping away Plaintiff's rank speculation, no evidence suggests, and no reasonable juror could conclude, that Jaspan harbored any discriminatory bias, or that he tried to persuade the Firm to rescind Plaintiff's offer.

*Third*, Plaintiff makes much of notes drafted by Foley's then-Chief Talent Officer, Jennifer Patton, during a conference with Firm management following the October 22 meeting. But when asked about her notes, Patton explained they were her "rough" notes, and she did not know what they meant to convey. *See* Patton Dep. 124:2-7 ("I don't recall specifically what they said about this point. My notes in here do say, 'Doesn't condone terrorism.' Whether that was her direct quote or Frank and Lisa's perception or something maybe my perception based on the conversation I don't know [*sic*]. These are just my rough notes."); *id.* 132:11-18 (Q. "The next line, 'Condemns Hamas terrorist activity.' That's something she conveyed to Noller and Pasquesi, correct?" A. "Again I don't recall specifically, but I believe because it's in my notes it's something that would have been shared on that call as something they discussed.")

Moreover, Patton's notes are plainly hearsay, and inasmuch as no evidence has been offered to qualify them for an exception to hearsay, they cannot be considered at summary judgment. *See* Fed. R. Evid. 801(c) (noting an out-of-court statement constitutes hearsay when it is offered into evidence "to prove the truth of the matter asserted in the statement"); *see also Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) (the proponent of hearsay evidence bears the burden of establishing that a hearsay exception applies or that the statements are non-hearsay; no party opponent admission where the employee was a non-managerial employee who did not have authority to supervise, manage, review, promote, hire, fire, or recommend any employment action); *Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2008 WL 4561543, at *2 (N.D. Ill. May

7

21, 2008) (in order to fall within the business records exception, the proponent of which has the burden of proving, the document must be "made at or near the time by, or from information transmitted by, a person with knowledge," and "kept in the course of a regularly conducted business activity" by someone whose "regular practice" it is "to make" the document, "***as shown by the testimony of the custodian or other qualified witness***" (emphasis added)).[2]

Accordingly, the admissible evidence establishes the recission of Plaintiff's offer was not based on any discriminatory motive, but rather, was a well-informed decision (albeit a difficult one) made because Plaintiff's statements and conduct violated the Firm's core values and called into question her judgement.[3]

### 2. Plaintiff's Alleged Comparators Are Not Similarly Situated To Her.

Equally fatal to Plaintiff's claims is her failure to proffer adequate comparator evidence. To be deemed "similarly situated," employees "must be 'directly comparable' to the plaintiff 'in all material respects.'" *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006)). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quotations omitted). In *Coleman*, the Seventh Circuit clarified, "[w]hile [the Court] have sometimes phrased

---

[2] Relatedly, Plaintiff's unsupported claim that Foley "lie[d] about the reason" for searching her social media should be rejected. Plaintiff cites no evidence supporting this attestation (because there is none), and the record evidence shows Karim, a member of Foley's team, Googled Plaintiff because she needed a new headshot and did not receive one from Plaintiff by the deadline. SOF ¶¶ 25-32.

[3] Further confirming the basis of the Firm's conclusions is the behavior Plaintiff displayed after Foley rescinded her offer. On December 18, 2023, she spoke publicly at a City of Chicago Committee on Health and Human Relations meeting and said her "only regret" regarding the situation was that she "did not say 'from the river to the sea' in [her October 11, 2023 City Council] speech." SOF ¶ 63; *see also id.* ¶¶ 65-66.

the question ambiguously as whether the comparators dealt with the same supervisor, the real question is whether they were treated more favorably by the same decisionmaker." *Id.* at 848.

Here, Plaintiff's evidence of Foley's alleged treatment of partners Max Chester and Dovi Alderstein does not advance her claims because as a matter of law, Chester and Alderstein are not proper comparators. Indeed, they are *different* from Plaintiff in all material respects. They work in different offices and states from Plaintiff and are partners of the Firm, not at-will employees. Unlike Plaintiff, the terms of their working relationship with Foley as partners are governed by a partnership agreement. As such, they can only be terminated or disciplined in compliance with the terms of that agreement. Also unlike Plaintiff, Doogal does not have sole authority over the terms and conditions of Chester's and Alderstein's working relationship with Foley. Plaintiff has failed to proffer any evidence that Chester and Alderstein are similarly situated to her so as to be considered her comparators. *See Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 827 (7th Cir. 2008).

Further, the undisputed evidence shows Chester's and Alderstein's social media activity was different, and moreover, that they responded differently when the Firm confronted them about that activity. *See* SOF ¶¶ 70-71; *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("[I]n order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a comparable set of failings"). Both voluntarily removed their posts. Patton 175:10-17. Chester "was immediately sorry and remorseful," "said he did not intend to make anybody in the firm feel uncomfortable" or "make the firm look bad," and explained "he was only trying to point out that you can condemn Isreal's response, but you also have to condemn Hamas's action." Benfield Dep. 50:9-51:13. In short, as a matter of law, Chester and Alderstein are unsuitable comparators to Plaintiff.

Plaintiff's reliance on *Coleman v. Donahoe* is unavailing. In *Coleman*, the U.S. Court of

9

Appeals for the Seventh Circuit reversed the district court's decision because it incorrectly held the plaintiff's comparators were not similarly situated to the extent they had different supervisors and job titles. The plaintiff's "two white, male co-workers were disciplined by the same decisionmaker, subject to the same code of conduct, and disciplined more leniently for violating the same rule as she." *Coleman*, 667 F.3d at 841. The Seventh Circuit found these similarities, along with the fact they worked at the same facility and were held to the same zero tolerance for violence policy, which applied equally to all *employees*, were enough to make a "meaningful comparison" irrespective of their other differences (positions and supervisors). *Id.* at 848-51. None of these similarities apply here.

Plaintiff's claim that the Firm's "'core value' at issue applies to the entire firm" is similarly off base. *See* Opp. at 13. Foley's core values are not akin to a formal employment policy such as the zero tolerance for violence policy in *Coleman*. Moreover, disciplinary action relative to Firm policies is necessarily applied differently among associates and partners because associates are Firm employees and partners are Firm owners. For all these reasons, there are, as in *Coleman*, "mitigating circumstances as would distinguish their conduct [and Foley's] treatment of them." *See Coleman*, 667 F.3d at 847.

To the extent Plaintiff is pointing to Special Counsel Carol Sanders and an associate from Foley's New York office ("MJ") as comparators, they similarly are unsuitable as a matter of law. As an initial matter, Plaintiff has proffered no evidence showing Sanders, MJ, and Plaintiff were subject to the same decisionmaker. If anything, the record suggests the contrary, as they each worked in different offices and met with different Firm partners regarding their public activity. *See* Patton Dep. 170:8-12; 175:8-9; 177:8-11.

Further, Sanders's social media posts were not about the October 7 attacks, and he removed the posts and voluntarily resigned after Foley confronted him about them the posts.

10

SOF ¶ 72; Patton Dep. 175:10-17. And with respect to MJ, her situation involved markedly different circumstances, including anonymous callers complaining about pro-Palestinian social media posts, in a context in which Foley adjudged that the tenor of the statements did not violate its core values. SOF ¶ 73.[4]

### B. Plaintiff Cannot Show Foley's Decision To Rescind Plaintiff's Offer Was Pretext For Discrimination.

Plaintiff's claims fail for the additional reason she has presented no evidence of pretext. It is axiomatic "the court's concern" is not whether "an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018) (citations omitted). This is because courts do not sit as a "super personnel department" to second guess employers' decisions. *See, e.g.*, *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012).

Plaintiff has not identified any evidence discrediting Foley's stated reasons for rescinding her offer. She claims Foley's reasons have "shifted" to "lack of judgment," but that is simply not the case. A concern about the poor judgment displayed by Plaintiff's public statements and actions have always been the center of Foley's decision. In fact, Doogal testified this was a key factor from the beginning in his decision to rescind Plaintiff's offer. Plaintiff does not dispute this key fact. *See* PRSOF ¶ 60.

Plaintiff also argues Doogal's explanation to the Firm that she condoned the October 7 attacks is somehow at odds with Foley's reasons for rescinding her offer. *See* Opp. at 11 ("Immediately after the revocation, Foley leadership falsely explained to the firm that Plaintiff

---

[4] Relying on MJ's purported Instagram handle, "catholiclawschoolgirl," Plaintiff asserts MJ is "neither Arab nor Muslim." *See* PRSOF ¶ 73; Opposition at Ex. 44. But this says nothing about MJ's ethnicity, and is otherwise insufficient for establishing MJ's ethnicity or religion. *See* Fed. R. Evid. 901 (evidence must be authenticated to be admissible); Fed. R. Evid. 801(c) (out-of-court statements offered to prove the truth of the matter asserted constitute inadmissible hearsay). Regardless, as explained herein, Plaintiff and MJ are also different in other material respects. *See Burks*, 464 F.3d at 751; *Coleman*, 667 F.3d at 847.

11

had condoned the Hamas attacks and terrorism."). But Pasquesi and Noller both testified that based on their meeting with Plaintiff, their impression was that Plaintiff condoned the Hamas attacks and did not understand the implications of her public statements on the Firm. *See* Noller Dep. 34:16-35:12; 78:17-22; Pasquesi Dep. 39:2-6.

Of course, Plaintiff's beliefs about the October 7 attacks is not what matters. What matters, is what Foley believed. And here, Pasquesi and Noller both unequivocally agree Plaintiff left them with the impression that she condoned the October 7 attacks and that she had no regard for how her public activity could negatively impact the Firm or its clients. *See id.*; *see also* Doogal Dep. 14:10-15:20; 114:23-116:23. Pasquesi and Noller shared these impressions with Doogal, who ultimately decided Plaintiff's conduct demonstrated poor judgment and violated the Firm's core values. Doogal Dep. 14:10-15:20; 114:23-116:23; 119:15-22; 120:1-2; *see also Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) ("even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason . . . because courts are not superpersonnel department[s] charged with determining best business practices"). Although Plaintiff may disagree with these facts, her burden at summary judgment is to present evidence to dispute them. She has failed to do so.

### C. Plaintiff's Declaration Contains Contradictory And Inadmissible Allegations, And Does Not Raise Genuine Issues As To Any Material Facts.

Plaintiff's declaration—proffered for the first time on summary judgment—does not raise any genuine issues as to any material facts. *See* Opp. at Ex. 10. As an initial matter, Plaintiff's father's place of employment is simply not relevant or material. There is no evidence this bore at all on the decision to rescind Plaintiff's offer. In fact, the evidence shows the contrary. *See, e.g.*, Pasquesi Dep. 48:13-14. And so whatever Plaintiff and Noller allegedly discussed about her father is of no moment.

Likewise, the conversation Plaintiff allegedly had with Foley Attorney Shabbi Khan (a

12

non-decisionmaker who is not a member of Firm management) about her case many days *after* the Firm decided to rescind her offer is not material and has no evidentiary value, as it plainly was unrelated to the decision and the decisional process. *See, e.g.*, *Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 444 (7th Cir. 1997) ("stray remarks . . . unrelated to the decisional process, are insufficient" to prove discrimination). Further, Khan's statements are hearsay that cannot be considered at summary judgment. *See* Fed. R. Evid. 801(c) (noting an out-of-court statement constitutes hearsay when it is offered into evidence "to prove the truth of the matter asserted in the statement"); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Finally, to the extent Plaintiff's declaration contains allegations that contradict her sworn deposition testimony, they should not be considered. *Compare* Opp. at Ex. 10 ¶¶ 2-3 *with* Pl.'s Dep. 142:8-15 (Q. "You mentioned that during the meeting with [Mr. Pasquesi] and [Ms. Noller], you also discussed your father. How did that come about? A. I don't remember the line of questioning, but I remember them asking me again similar questioning here of why did you go to the City Council Meeting."); *see also Makeda-Phillips v. White*, No. 12-3312, 2015 WL 3464313, at *5 (C.D. Ill. May 29, 2015), *aff'd sub nom. Makeda-Phillips v. Illinois Sec'y of State*, 642 F. App'x 616 (7th Cir. 2016) (striking plaintiff's declaration: "Plaintiff offers no reason why she could not remember any details about her claims at her deposition but could remember specifics about her claims a few months later in a Declaration").

## II. PLAINTIFF'S IMPROPER RESPONSES TO FOLEY'S RULE 56.1 STATEMENT SHOULD BE STRICKEN, IGNORED, OR TREATED AS ADMISSIONS

Plaintiff's denials and/or responses to certain paragraphs in Foley's Rule 56.1 Statement do not—as a matter of law—create genuine issues of fact and should be either stricken, ignored, or treated as admissions.

*First*, PRSOF ¶¶ 28, 30, 52, and 59 are improper, as Plaintiff cannot "deny" deposition

13

testimony as untruthful without supporting evidence. *See Waldon v. Wal-Mart Stores, Inc.*, Store No. 1655, 943 F.3d 818, 823 (7th Cir. 2019) ("Criticizing the credibility of the movant's affiants, alone, is not enough to avoid summary judgment."); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts—no proof—to support h[er] claims, summary judgment in favor of the defendant is proper.").

*Second*, Plaintiff seeks to create an issue of fact by "denying" PRSOF ¶¶ 29, 39, 53, 55, and 59 as incomplete. This is improper. If Plaintiff believes there are additional undisputed facts to be considered, they should be included in her statement of additional material facts. *See Jakubowska v. Lakeside Bldg. Maint.*, No. 97 C 4795, 1997 WL 665747, at *1 (N.D. Ill. Oct. 16, 1997) (plaintiff's responses saying "denied as inaccurate and incomplete" failed to comply with Rule 56(e) because they were "not supported by evidence"); *Trans Helicoptere Serv. v. Jet Support Servs., Inc.*, No. 03 C 0498, 2004 WL 2921856, at *4 (N.D. Ill. Dec. 14, 2004) (same).

*Third*, Plaintiff's hearsay objection and responses to PRSOF ¶¶ 70-71 are improper. The information is not being offered for the truth of the matter asserted, but rather for their effect and impression on the listener/deponent, and thus is <u>not</u> hearsay.[5]

*Fourth*, and finally, Plaintiff denies numerous facts on multiple other improper bases, including: ¶¶ 64-66 (denying as after acquired evidence but Foley has not argued an after acquired evidence defense); ¶ 57 (misstating record in denying); ¶¶ 69, 72 (cannot deny as

---

[5] "Statements introduced to show their effect on the listener, rather than the truth of the matter they assert, are not hearsay." *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019); *see also United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022) ("A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement and if the 'actual use' of the statement . . . was to demonstrate the listener's response.") (internal citations omitted); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 575 (7th Cir. 2021) (out-of-court statements were not hearsay because statements were used to show state of mind of manager who recommended terminating employee's employment); *Kotoklo v. DePaul Univ.*, No. 20-CV-0635, 2021 WL 4477947, at *3 (N.D. Ill. Sept. 30, 2021) (finding out-of-court statements regarding complaints manager received about plaintiff-employee "may be admitted for the non-hearsay purpose of explaining the effect the complaints he says he heard on his decision to terminate [the plaintiff-employee]").

misleading using unrelated facts); and ¶ 73 (cannot deny a fact because it was not quoted in any deposition testimony where the statement of fact is not a quote). *See Wiechen v. Palos Cmty. Hosp.*, No. 05 C 4688, 2006 WL 2794970, at *1 (N.D. Ill. Sept. 28, 2006) ("LR 56.1 calls for strict compliance, so that a nonmovant's failure to comply is treated as the admission of the movant's statement of facts;" "argumentative rather than factually based denials," "insertion of extraneous information in [] responses," and "reliance on assertions unsupported in the manner required by 56(e)," are improper).

Accordingly, PRSOF ¶¶ 28-30, 39, 52-53, 55, 57, 59, 64-66, and 69-73 should be stricken, ignored, or treated as admissions.

## CONCLUSION

Foley respectfully requests the Court: (1) enter judgment in its favor and against Plaintiff Jinan Chehade; (2) dismiss all her claims in their entirety with prejudice; (3) strike, ignore, or deemed admitted PRSOF ¶¶ 28-30, 39, 52-53, 55, 57, 59, 64-66, and 69-73; and (4) award Foley its costs, reasonable attorneys' fees, and such further relief as the Court finds proper.

**DATED: June 4, 2025**

Respectfully submitted,

Foley & Lardner LLP

By: */s/ Tracy M. Billows*
      One of Its Attorneys

Gerald L. Pauling (gpauling@seyfarth.com)
Tracy M. Billows (tbillows@seyfarth.com)
Emily J. Miller (emmiller@seyfarth.com)
Seyfarth Shaw LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

***Attorneys for Foley & Lardner LLP***

15

**CERTIFICATE OF SERVICE**

I do hereby certify that on June 4, 2025, the foregoing **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

*/s/ Tracy M. Billows*
Tracy M. Billows